UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

CHARLES EPLEY,

      Plaintiff,

v.

MARCO GONZALEZ,
Sergeant at Montford, *et al.*,

      Defendants.

No. 5:18-CV-142

**ORDER ADOPTING FINDINGS, CONCLUSIONS,
AND RECOMMENDATIONS OF THE MAGISTRATE
JUDGE AND OVERRULING THE PARTIES' OBJECTIONS**

Before the Court are the Findings, Conclusions, and Recommendations (FCR) of United States Magistrate Judge Amanda 'Amy' R. Burch (Dkt. No. 202).  Judge Burch recommends granting in part and denying in part the TDCJ's motion for summary judgment (Dkt. No. 178) on the plaintiff's claims under the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA).  Both parties timely filed objections to the FCR. Dkt. Nos. 204; 205.

The Court overrules the objections and adopts the FCR in full.  The Court grants TDCJ's motion for summary judgment on only the plaintiff's transportation-related failure-to-accommodate claims and denies the motion for summary judgment on the plaintiff's housing-related failure-to-accommodate claims.  Because TDCJ does not seek summary judgment on the plaintiff's disability discrimination claims, these claims also survive.

1.    **Factual and Procedural Background**

    A.    **Factual Background**

Epley's claims arise from events occurring in 2016 when he was temporarily housed in a multi-occupancy cell at the Montfort Unit and then transferred from that unit via a prison bus. Epley contends that, by failing to house him in a single cell and transport him in isolation via medical van, TDCJ failed to accommodate his known disabilities.

    i.    **Epley's Relevant Medical and Mental-Health History**

Epley was in TDCJ custody from November 1991 until he was released on parole in 2018. *See* Dkt. Nos. 180-1 at 209; 192 at 3. Sometime prior to his incarceration, Epley was diagnosed with PTSD. *See* Dkt. No. 192 at 2, 52. In 1994, Epley reported being attacked by fellow inmates and thereafter consistently complained of various physical and mental afflictions, including recurring migraines, nausea, vomiting, memory loss, anxiety, flashbacks, panic attacks, sleeplessness, and dizziness. *See, e.g.*, Dkt. Nos. 182 at 17, 21, 31, 57; 192 at 58–59, 79, 82, 111. Epley also reported multiple times throughout his incarceration that, as a result of the altercation, he was diagnosed with a traumatic brain injury (TBI). *See, e.g.*, Dkt. No. 192 at 34, 38, 71, 94. Upon review of Epley's medical records, the defendant's expert, Dr. Leeah, concluded that Epley self-diagnosed a TBI and was never given this diagnosis by a medical provider. Dkt. No. 180-1 at 211. Of the numerous medical records submitted by the parties, only one indicates that Epley may have been diagnosed with a TBI. *See* Dkt. No. 192 at 93 (stating "diagnosis specific history and clinical findings / supporting lab and x-ray findings: TBI since 1994 closed head injury").

    ii.    **Epley's Single-Cell Restriction**

Following the altercation and by June 1994, a medical provider added a single-cell medical restriction to Epley's treatment plan. *See* Dkt. No. 190 at 44. Such restrictions are

documented on an inmate's Health Summary for Classification (HSM-18) form, which is used by TDCJ's classification committee to assign an inmate to the proper cell and bunk. Dkt. No. 180-1 at 5.

The parties dispute the meaning of certain notations on Epley's HSM-18 forms with respect to the single-cell restriction. The HSM-18 form completed in June 1994—which is the first HSM-18 form on record documenting the single-cell restriction—documented this restriction by marking an "X" next to "single cell only" and noting that the restriction was temporary by marking an "X" next to "30 Days." Dkt. No. 190 at 44. A medical note completed in October 1996 indicates that Epley's single-cell restriction was reinstated on September 5, 1996. *See* Dkt. No. 192 at 108. Notably, the HSM-18 form completed on September 5 includes a "00" notation next to "single cell only." *See* Dkt. No. 190 at 43. On September 23, 1996, a medical provider noted that Epley "would remain on single cell." Dkt. No. 192 at 109. Likewise, the HSM-18 form completed on September 23 includes the "00" notation next to "single cell only." Dkt. No. 190 at 42. In the years following until Epley's release in 2018, TDCJ medical providers signed multiple HSM-18 forms for Epley that included this "00" notation next to "single cell only." *See, e.g.*, Dkt. No. 190 at 2–40, 45.

Additionally, the "00" notation appeared on one of Epley's HSM-18 forms next to "ground floor only" and "lower [bunk] only" on the same day a medical provider added these restrictions and noted that the floor and bunk restrictions were "indefinite." *Compare* Dkt. No. 190 at 17 *with* Dkt. No. 192 at 75. Shortly thereafter, the "00" notation was removed from Epley's updated HSM-18 form when these restrictions were lifted, and an

– 3 –

"X" notation was added next to "no restriction" for both the floor and bunk categories. *Compare* Dkt. No. 190 at 15–16 *with* Dkt. No. 192 at 74.

Based on the HSM-18 forms and medical notes, Epley maintains that the "00" notation indicates a restriction is indefinite and, thus, asserts that he had a single-cell restriction when transferred to the Montfort Unit in 2016. *See* Dkt. No. 189 at 9–10. He also points to the testimony of TDCJ's corporate representative, Warden Joe Lopez, who stated that failure to remove the "00" from the HSM-18 forms indicated that the single-cell restriction was permanent and active in 2016. Dkt. No. 190 at 110–11.

However, the defendant's expert, Dr. Leeah, testified that Epley's single-cell restriction expired in 2003. Dkt. No. 180-1 at 209. Dr. Leeah bases this determination on Epley's HSM-18 form dated January 10, 2003, that includes the "00" notation next to "single cell only" and also has a handwritten and initialed notation where the medical provider's signature belongs that states "expired 1-9-03." Dkt. No. 182 at 379. According to Dr. Leah, this notation was on the first HSM-18 form uploaded after TDCJ moved to electronic health records. Dkt. No. 180-1 at 209. Dr. Leeah states that, "[g]iven that the restriction had expired, the next medical or mental health provider to update [Epley's HSM-18] should have either deleted the [single-cell] restriction or renewed it. For some unknown reason, this never happened." *Id.*

### iii.    Epley's 2016 Transfer to the Montfort Unit

Epley was referred to the Montfort Unit on June 2, 2016, for mental-health treatment. Dkt. No. 182 at 136–39. The medical provider noted on the transfer form that Epley had a "[s]ingle cell only" housing restriction. *Id.* at 139. Epley was transported from his current facility to the Montfort Unit via medical van, which is standard protocol for

inmates transferred for mental-health treatment.  Dkt. Nos. 180-1 at 209–10; 190 at 119–20.
Prior to evaluation, Epley was housed in a single cell—again per standard protocol.  Dkt.
Nos. 180-1 at 170; 190 at 115.

On June 3, Dr. Twila Penland evaluated Epley.  *See* Dkt. No. 192 at 21.  As part of a
mental-health evaluation at Montford, a medical provider determines if an inmate needs to
remain in a single cell while at the Montfort Unit.  Dkt. No. 180 at 15.  Such a
determination is made apart from any prior restriction imposed by another facility and,
unless the medical provider communicates the need for a single cell to the Montfort officer
making the housing assignment, an inmate may be housed in a multi-occupancy cell.  *Id.*
When documenting Epley's mental-health evaluation, Dr. Penland's discharge note stated:
"Discharge to unit of assignment.  Refer to outpatient mental health for follow up and risk
management issues.  HSM-18 as of 12/01/15 appears correct."   Dkt. No. 192 at 21.
Notably, the HSM-18 form reviewed by Dr. Penland has the "00" notation next to "single
cell only."  Dkt. No. 190 at 14.

Three days later, Montfort officers attempted to move Epley to a four-person cell.
*See* Dkt. Nos. 180 at 7; 180-1 at 170–71, 173–74; 190 at 81.  Epley refused and "informed
[the officers] that the psychiatrists had ordered [him] to NOT go into a cell occupied by
prisoners, per the medical order that [he] be kept single-cell at all times."  Dkt. No. 56 at 2.[1]
Eventually the officers forced Epley into the four-person cell.  *Id.* at 2–7; *see also* Dkt. No.
183.  Epley contends that he lost consciousness while in the four-person cell and awoke in a

---

[1] Epley's questionnaire responses are signed under penalty of perjury and will be considered
competent summary judgment evidence.  Dkt. No. 56 at 28; *see also* Dkt. No. 202 at 9 n. 2, 12 n. 3.

corner with semen on his face.  Dkt. No. 56 at 7.  The following morning Epley was transferred back to his unit of assignment via prison bus.  *See id.* at 8; 190 at 120.

### B.    Procedural History

Epley initially filed suit in May 2018, proceeding pro se, against TDCJ and other defendants.  Dkt. No. 3.  After an opportunity to amend, *see* Dkt. No. 15, the Court[2] dismissed all claims in June 2019.  Dkt. Nos. 57; 71; 72.  Epley timely appealed, and the Fifth Circuit reversed dismissal of Epley's ADA/RA claims.  Dkt. Nos. 81–82.  Upon remand, Epley amended his complaint.  Dkt. No. 90.  Subsequently, the Court ordered Epley to clarify which defendants he intended to bring ADA/RA claims against and gave him the opportunity to revive his state-law claims, but Epley failed to do so successfully.  *See* Dkt. Nos. 100; 104; 105.  Accordingly, the Court struck and dismissed all claims against all defendants other than the ADA/RA claims against TDJC.  *See* Dkt. Nos. 112; 116.  Additionally, the Court appointed counsel for the plaintiff.  Dkt. No. 152.

Epley's only remaining claims are ADA/RA claims against the TDCA for: "(1) disability discrimination based on 'the Texas prison system's culture of hostility toward prisoners with mental-disorders [sic]'; and (2) failure to accommodate."  Dkt. Nos. 84 at 1–2; 113 at 1; *see also Epley v. Gonzalez*, 860 F. App'x 310, 312 (5th Cir. 2021).  More specifically, Epley alleges that TDCJ failed to accommodate his disability by forcing him into a four-person cell when he required a single cell and by transporting him with other prisoners on a prison bus instead of in isolation on a medical van.  He also alleges that

---

[2] This case was previously before United States District Judge Sam R. Cummings and United States Magistrate Judge D. Gordon Bryant, Jr. and was transferred to the undersigned on May 16, 2025. *See* Dkt. Nos. 23; 114; 203.

TDCJ discriminates against inmates with mental-health conditions by maintaining a culture of hostility.  *See* Dkt. Nos. 84 at 1–2; 90 at 4; 113 at 1.

TDCJ filed a motion for summary judgment on Epley's failure-to-accommodate claims based on TDCJ's alleged denial of housing and transportation accommodations. [3] *See* Dkt. Nos. 178; 179.  It also sought summary judgment on Epley's claims for mental and emotional damages, alleging they are barred by the Prison Litigation Reform Act's (PLRA) physical-injury requirement. *See id.*  Epley responded (Dkt. No. 188), and TDCJ replied (Dkt. No. 197).

In the FCR, Judge Burch found that: (1) Epley sufficiently pled a qualifying disability, Dkt. No. 202 at 25–27; and (2) TDCJ did not move for summary judgment on the plaintiff's disability discrimination claims, *id.* at 38–40.  She recommends that the Court: (1) decline to consider whether TDCJ is entitled to sovereign immunity on Epley's ADA claim, Dkt. No. 202 at 22–25; (2) deny the motion for summary judgment on Epley's claim that TDCJ failed to accommodate his disability because it forced him to stay in a four-person cell, *id.* at 27–33; (3) grant the motion for summary judgment on Epley's claim that TDCJ failed to accommodate his disability because it transported him on a prison bus instead of a medical van, *id.* at 33–38, and (4) deny the motion for summary judgment on the plaintiff's claims for mental and emotional damages, *id.* at 38.  Both parties objected, Dkt. Nos. 204; 205, and Epley responded to TDCJ's objections, Dkt. No. 206.

---

[3] As discussed in more detail below, the Court agrees with Judge Burch's recommendation that the plaintiff sufficiently pled disability-discrimination claims and that TDCJ did not seek summary judgment on these claims.  *See infra* Analysis § 3.D.

2.    **Legal Standards**

A.    **Review of the Magistrate Judge's Recommendations**

When a party files objections to a Magistrate Judge's recommendations, the Court must review those objected-to portions de novo.  *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 646 (5th Cir. 1994); 28 U.S.C. § 636(b)(1).  As for portions where no specific objections are filed within the 14-day period, the Court reviews the Magistrate Judge's findings and recommendations only for plain error.  *Serrano v. Customs & Border Patrol, U.S. Customs & Border Prot.*, 975 F.3d 488, 502 (5th Cir. 2020).

B.    **Summary Judgment Legal Standard**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A genuine dispute of material fact exists if a reasonable jury could enter a verdict for the non-moving party."  *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 358 (5th Cir. 2020).  The moving party "bears the initial responsibility of demonstrating the absence of a genuine issue of material fact," *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (cleaned up) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)), and "identifying those portions of [the record] which it believes demonstrate [that] absence." *Celotex Corp.*, 477 U.S. at 323.

In evaluating a summary-judgment motion, the Court draws all reasonable inferences in the light most favorable to the nonmoving party.  *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018).  However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). "A fact 'is material if its resolution could affect the outcome of the action.'" *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs.*, 627 F.3d 134, 134 (5th Cir. 2010)). The Court must consider materials cited by the parties, but it may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

"Where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 301–02 (5th Cir. 2020) (quoting *In re La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017)). The movant, however, does not need to "*negate* the elements of the nonmovant's case." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017) (emphasis in original) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). "If the moving party fails to meet [its] initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001)).

When the moving party has met its burden, "the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). Rather, the nonmovant must identify specific evidence in the record and articulate how the evidence supports its claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014); *see also* Fed. R. Civ. P. 56(c)(1)(A). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"

*Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little*, 37 F.3d at

1075). Additionally, Rule 56 does not impose a duty on the Court to "sift through the

record in search of evidence" to support the nonmovant's opposition to the motion for

summary judgment. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)

(quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

"A failure on the part of the nonmoving party to offer proof concerning an essential

element of its case necessarily renders all other facts immaterial and mandates a finding that

no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164

(5th Cir. 2006). If the nonmoving party "fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial," summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

"Where the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith

Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391

U.S. 253, 288 (1968)).

### C.    Disability Discrimination Legal Standard[4]

To state a viable claim for disability discrimination under the ADA, the plaintiff

must allege, and ultimately show, that (1) "he is a qualified individual within the meaning

of the ADA," (2) the public entity is excluding him "from participation in, or" denying him

the "benefits of, services, programs, or activities for which the public entity is responsible,

---

[4] "The language in the ADA generally tracks the language set forth in the RA." *Delano-Pyle v. Victoria County*, 302 F.3d 567, 574 (5th Cir. 2002). As a result, "[j]urisprudence interpreting either section is applicable to both." *Id.* (alteration in original). Therefore, the Court refers throughout this Order only to the ADA, but the analysis applies to both the ADA and the RA equally.

or" the entity is otherwise discriminating against him, and (3) "that such exclusion, denial of benefits, or discrimination is by reason of his disability." *Windham v. Harris County*, 875 F.3d 229, 235 (5th Cir. 2017) (quoting *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004)). A plaintiff may satisfy the third element by proving that the public entity failed to accommodate, under which theory a plaintiff must show that "(1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Sligh v. City of Conroe*, 87 F.4th 290, 304 (5th Cir. 2023) (quoting *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015)).

Ordinarily, a plaintiff may satisfy this theory by alleging that he identified his disability and its resulting limitations and requested an accommodation "in direct and specific terms." *Id.* If a plaintiff does not so directly request an accommodation, then he must plead sufficient factual matter to support that "the disability, resulting limitation, and necessary reasonable accommodation were open, obvious, and apparent." *Id.* (citation modified).

### 3.    Analysis

The Court overrules the parties' objections and affirms the FCR in full. Therefore, the Court grants TDCJ's motion for summary judgment with respect to Epley's transportation-related failure-to-accommodate claims and denies the motion with respect to all other claims.

### A.    The Court has found no plain error in the unobjected-to portions of the FCR and thus adopts those portions of the FCR.

Judge Burch recommends that the Court decline to consider whether TDCJ is entitled to sovereign immunity on Epley's ADA claim and find that Epley had a qualifying

disability under the ADA.  Dkt. No. 202 at 22–27.  Judge Burch further recommends that the Court deny the motion for summary judgment on the plaintiff's claims for mental and emotional damages.  *Id.* at 38.  The Court has reviewed these unobjected-to portions of the FCR for plain error.  Finding none, the Court accepts and adopts those portions of the FCR.

**B.    The Court overrules Epley's objections regarding his transportation-related failure-to-accommodate claim.**

It is undisputed that Epley's HSM-18 form at the time he was transported from the Montfort Unit did not place any restrictions on Epley's mode of transportation and that he did not request such accommodation.  *See* Dkt. Nos. 56 at 4, 27–28; 190 at 14.  Thus, to succeed on his transportation-related failure-to-accommodate claims, Epley must show "the disability, resulting limitation, and necessary reasonable accommodation" of transport by medical van were "open, obvious, and apparent."  *Windham*, 875 F.3d at 237 (quoting *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996)).  The Court concludes that there is no genuine issue of fact as to whether it was open, obvious, and apparent to TDCJ that transport by medical van was a necessary accommodation.  Thus, the Court agrees with Judge Burch's recommendation that TDCJ is entitled to summary judgment on this claim.

**i.    There is no genuine issue of fact as to whether TDCJ's policy required TDCJ to transport Epley in a medical van.**

Epley contends that TDCJ's policy requiring van transport for inmates in restrictive housing includes inmates housed in a single cell who are receiving mental-health treatment.  Dkt. No. 205 at 4.  And he also argues that, because the policy required TDCJ to transport Epley via medical van, Judge Burch incorrectly concluded that the need for the accommodation was not open, obvious, and apparent.  *Id.* at 4–5.

But this is not an accurate reading of the policy. TDCJ's transportation policy for "transfer of inmates with serious acute conditions" includes a list of "[a]pproved medical transportation criteria." Dkt. No. 190 at 122. The list of approved medical criteria for transport via van includes inmates with a "CLASSIFICATION OF RESTRICTIVE HOUSING, DEATH ROW, OR CLOSE CUSTODY." *Id.* at 121 (emphasis in original). Notably, the policy states that "[t]his list is not all inclusive and does not replace clinical judgment." *Id.* at 122.

Another policy outlining health evaluations for inmates in restrictive housing defines "restrictive housing" as "[a] placement that requires an inmate to be confined to a cell at least 22 hours per day for the safe and secure operation of the facility." *Id.* at 126. Following this definition are the required procedures for conducting health evaluations for inmates placed in restrictive housing. *Id.* And one of these procedures states, in part:

I.  Segregation/restrictive housing

. . .

   B.  Health review prior to placement into segregation/restrictive housing includes:

. . .

      2.  Inmates placed in single cell who are receiving mental health treatment must have a physical evaluation by a licensed health care provider (physician, mid-level provider or nurse) completed as soon as possible and documented on the HSM-15 or the appropriate electronic counterpart no later than 12 hours for facilities with 24 hour onsite medical staff and 24 hours for all other facilities.

*Id.* Epley argues that the above paragraph "suggest[s]" that a single-cell restriction for inmates receiving mental health treatment is a type of restrictive housing and, thus, required him to be transported by medical van. Dkt. No. 205 at 4. But even assuming without deciding that Epley's single-cell restriction qualified as "restrictive housing," the

– 13 –

transportation policy is clear that the list of approved medical criteria for transportation by van is "not all inclusive and does not replace clinical judgment." *Id.* at 122. Put another way, that "restrictive housing" is on the list of approved criteria for van transport does not require van transport of an inmate in restrictive housing if the inmate's health records indicate otherwise. And Epley's HSM-18 form that was reviewed by Dr. Penland prior to his transport from the Montfort Unit and deemed "correct" included no transportation restriction. *Id.* at 14; *see also* Dkt. No. 192 at 21.

Thus, regardless of whether Epley fell within the definition of an inmate in restrictive housing, Epley's health records indicate that the medical providers determined that Epley did not require van transport. *See* Dkt. No. 190 at 14. And the policy at issue expressly states that the list of approved medical criteria for van transport "does not replace [these medical providers'] clinical judgment." *Id.* at 121–22. Therefore, the Court agrees that there is no issue of fact as to whether TDCJ's policy required Epley to be transported in a medical van and overrules Epley's first and second objections.

### ii. There is no issue of fact as to whether it was open, obvious, and apparent that Epley required the reasonable accommodation of transport by medical van.

In his final objection, Epley contends that, based on the "totality of circumstances"—including: (1) his mental-health diagnosis, which resulted in "debilitating headaches, anxiety, and panic attacks," (2) the physical injuries he suffered from being forced into a multi-prisoner cell, and (3) his documented single-cell restriction—made the "need to be transported in isolation . . . open, apparent, and obvious to TDCJ." Dkt. No. 205 at 5–6. However, Epley points to no evidence or authority that supports this contention.

– 14 –

Epley first asserts that, even though he did not report his injuries or ask for medical care while at the Montford Unit, *see* Dkt. No. 56 at 4, he reported these injuries as soon as he arrived at another facility, Dkt. No. 205 at 6.  In support, Epley refers the Court to citations in his summary judgment response, some of which cite to medical records made in June 2016 documenting injuries allegedly sustained while at the Montfort Unit.  *See* Dkt. No. 205 at 6 (citing Dkt. No. 189 at 25–26); *see also* Dkt. No. 192 at 10–11.  But even if Epley reported such injuries shortly after his bus transport from the Montfort Unit, this provides no evidence that he reported such injuries to the Montfort Unit prior to his transport.  Although Epley argues that he was put on a bus by TDCJ to conceal such injuries that "would have been almost impossible to miss," Dkt. No. 205 at 7, the same medical records that document his alleged injuries also state that the medical provider observed the patient in "mild distress" with "subjective" pain and "possible" strains or fractures.  Dkt. No. 192 at 10.  In short, there is no medical documentation or other evidence of injury requiring a medical van or of TDCJ's actual knowledge of or attempt to conceal such injuries.  Thus, Epley has failed to point to any competent summary-judgment evidence that the need for van transport was open, obvious, and apparent to TDCJ, and no issue of fact remains as to this element of his transport-related failure-to-accommodate claims.

Accordingly, the Court overrules the plaintiff's objections and adopts the FCR's recommendation that the Court grant TDCJ's motion for summary judgment on these claims.

C.    **The Court overrules TDCJ's objections regarding Epley's housing-related failure-to-accommodate claim.**

The Court determines that issues of fact remain as to whether Epley's single-cell restriction had expired and whether a medical provider at the Montford Unit determined a single cell was necessary at the time Epley was housed in a multi-person cell.

      i.    **A genuine issue of material fact remains as to whether Epley's single-cell restriction expired prior to his stay at the Montfort Unit.**

Judge Burch determined that there is a genuine issue of fact as to the meaning of the "00" notation on the single-cell restriction listed on Epley's HSM-18 forms over the course of several years. Dkt. No. 202 at 29. TDJC objects to this finding based on Dr. Leeah's opinion that the "00" indicates that the single-cell restriction had expired in 2003 and was left on subsequent HSM-18 forms by mistake. Dkt. No. 204 at 3–4. Dr. Leeah also notes, "critically, that none of Epley's subsequent medical providers ever identified the need for a single cell." *Id.* at 3. TDCJ further argues that, because Epley did not present evidence to rebut Dr. Leeah's conclusions, no issue of fact remains as to whether Epley had a single-cell restriction at the time of the alleged failure to accommodate. *Id.* at 4.

Judge Burch correctly concluded that the parties' evidence creates an issue of fact as to whether Epley had a single-cell restriction at the time of the alleged violations. As Judge Burch points out, "Epley cites to the numerous HSM-18 forms healthcare providers signed between 2003 and 2016 to support his view that the '00' reflected a determination that he required a single cell." Dkt. No. 205 at 29–30; *see also, e.g.*, Dkt. No. 190 at 2–40, 45. Although TDCJ relies on Dr. Leeah's opinion that the "00" notation means the single-cell restriction had expired, TDCJ's corporate representative, Warden Lopez, testified that the failure to remove the "00" from the HSM-18 forms indicated that the single-cell restriction

– 16 –

was permanent and active.  Dkt. No. 190 at 110–11.  And that this notation was included on HSM-18 forms to indicate other indefinite restrictions and then removed when these restrictions were lifted further supports Epley's interpretation of the "00" notation.  *Compare* Dkt. No. 192 at 74–75 *with* Dkt. No. 190 at 14–17; *see also* Dkt. No. 202 at 29 & n.7.

Accordingly, the Court concludes that the parties have presented evidence that creates a genuine issue of material fact regarding whether Epley's single-cell restriction was active at the time of the alleged failure to accommodate and overrules this objection.

### ii.    A genuine issue of material fact remains as to whether TDCJ staff at the Montford Unit recommended or knew of Epley's need for single-cell housing.

Next, TDCJ argues that, even if the single-cell restriction noted on Epley's HSM-18 form had not expired, it did not automatically apply at the Montford Unit and, thus, is immaterial.  Dkt. No. 204 at 4.  More specifically, TDCJ argues that "[u]nless a Montford Unit medical provider determines that an inmate needs a single cell at that unit and communicates that need to his treatment team, the inmate may be housed in a multi-person cell."  *Id.*

Even accepting these assertions as true, the summary-judgment evidence creates an issue of fact as to whether a Montfort Unit medical provider determined a single cell was necessary and communicated this to the treatment team.  Warden Lopez testified that providers at the Montford Unit reference an inmate's current HSM-18 form when making a housing assignment to "make sure that [TDCJ] is in compliance with [the inmate's] medical restrictions or medical needs" and "take in what the provider is saying [the inmate's] current status or mental health needs are."  Dkt. No. 180-1 at 164.  And there is evidence that the physician who evaluated Epley at the Montford Unit, Dr. Penland, reviewed Epley's

– 17 –

current HSM-18 form—which included the "00" notation next to the single-cell restriction—and determined it "appear[ed] correct."  Dkt. Nos. 190 at 14; 192 at 21.  Moreover, Epley stated under oath that he informed the guards who placed him in the four-person cell that the mental-health providers had ordered he be placed in a single cell at all times.  Dkt. No. 56 at 2.  TDCJ attempts to dismiss each piece of evidence, arguing that, regardless of whether Dr. Penland knew of the restrictions and noted that the HSM-18 was correct, she was not bound by prior TDCJ restrictions.  Dkt. No. 204 at 5.  And TDCJ may ultimately prove to be correct if a factfinder determines that Dr. Penland did not order or communicate a single-cell restriction.  However, in viewing the evidence in a light most favorable to the plaintiff, Dr. Penland's notation that the current HSM-18 was correct coupled with Lopez's testimony that providers at the Montford Unit reference these HSM-18 forms when making housing determinations provide some evidence that Dr. Penland kept the single-cell restriction intact.  Moreover, that Epley informed the guards that he required a single cell provides additional support for his contention that TDCJ had actual knowledge of this restriction.  Therefore, in viewing all summary-judgment evidence and reasonable inferences in a light most favorable to the plaintiff, the Court concludes that there is a genuine issue of fact as to whether a single-cell restriction was in place and whether TDCJ knew of such restriction when it placed Epley in a four-person cell.  Accordingly, the Court overrules TDCJ's objections with respect to the housing-related failure-to-accommodate claim.

**D.    The Court overrules TDCJ's objection that Epley has not sufficiently pled or abandoned discrimination claims based on TDCJ's alleged "culture of hostility."**

Finally, the Court concludes that, in light of the Fifth Circuit's and Magistrate Judge Bryant's prior orders, Epley sufficiently pled disability-discrimination claims based on TDCJ's alleged "culture of hostility" distinct from his failure-to-accommodate claims. Because TDCJ did not move for summary judgment on these claims, the Court agrees that these disability-discrimination claims "remain[] viable at this juncture," Dkt. No. 202 at 39, and overrules the defendant's objection with respect to these claims.

In its opinion concluding that Epley sufficiently stated disability-discrimination claims in violation of the ADA and RA, the Fifth Circuit stated that "Epley accused Defendants of discriminating against him on the basis of his disability in violation of the ADA and § 504 'due to the Texas prison system's culture of hostility toward prisoners with mental-disorders' and for Defendants' refusal to accommodate his disabilities." *Epley v. Gonzalez*, 860 F. App'x 310, 312 (5th Cir. 2021). Relying on this language, Magistrate Judge Bryant stated in two orders—one directing the plaintiff to amend his complaint with respect to only the plaintiff's remaining ADA and RA claims and one directing TDCJ to answer the amended complaint—that Epley's "only live claims in this action are those under the ADA and RA for: (1) disability discrimination based on 'the Texas prison system's culture of hostility toward prisoners with mental-disorders [sic]'; and (2) failure to accommodate." Dkt. Nos. 84 at 1–2; 113 at 1. Following this unambiguous statement of the live claims, Judge Bryant ordered TDCJ to "file an answer, motion, or other responsive pleading to the ADA and RA claims in the Second Amended Complaint." Dkt. No. 113 at 2. In its answer to the amended complaint, the TDCJ denied that it failed to make necessary housing or

transportation accommodations, Dkt. No. 119 ¶ 11, and denied "disability discrimination based on the Texas prison system's culture of hostility toward prisoners with mental disorders, *id.* ¶ 12."

Now, in response to Judge Burch's recommendation that a disability-discrimination claims distinct from the failure-to-accommodate claims remain pending, TDCJ asserts that the plaintiff never pled such claims and, even if he did, the claims were either abandoned or the Court failed to order TDCJ to answer it. *See* Dkt. No. 204 at 6–8. This assertion, however, misstates the Court's orders. Judge Bryant enumerated two distinct ADA/RA claims in his orders following the Fifth Circuit's remand and ordered TDCJ to respond to these claims. *See* Dkt. Nos. 84 at 1–2; 113 at 1–2. Although TDCJ had the opportunity to file a "motion[] or other responsive pleading" contesting the sufficiency of the second amended complaint, *id.*, TDCJ chose instead to answer and specifically deny the plaintiff's allegations. Dkt. No. 119 ¶ 12.

The TDCJ now argues that it "act[ed] under the presumption that the only live claim was Epley's ADA/RA failure-to-accommodate claim," Dkt. No. 204 at 8, because the then-pro se plaintiff labeled the disability discrimination claim as an equal-protection Fourteenth Amendment claim, *see* Dkt. No. 90 at 5. The Court recognizes that Epley states his second claim as "'[d]isability discrimination based on the Texas prison system's culture off hostility toward prisoners with mental disorders' ('disability discrimination'), i.e., the violation of federal rights to receive 'equal protection' of the law per the 14th Amend." Dkt. No. 90 at 4. The Court does not, however, agree with the TDCJ that this language indicates "that the claim was explicitly abandoned." Dkt. No. 204 at 6. Epley included this reference to the Fourteenth Amendment within a section entitled "THE TWO LEGAL CLAIMS,

– 20 –

STATED IN THE ORDER (ECF 84)," Dkt. No. 90 at 4, clearly indicating his intent to amend the two ADA/RA claims Judge Bryant identified in his order, *see* Dkt. No. 84 at 1–2. Although not a model of clarity, in holding Epley's "*pro se* complaint, however inartfully pleaded, . . . to less stringent standards than formal pleadings drafted by lawyers," *Simmons v. United States*, 142 S. Ct. 23, 25 (2021) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), the Court finds that Epley sufficiently pled disability-discrimination ADA/RA claims distinct from his failure-to-accommodate claims. And, regardless of the TDCJ's presumptions based on the plaintiff's statements in his second amended complaint, Judge Bryant's order following this complaint expressly ordered TDCJ to respond to two distinct ADA/RA claims—disability-discrimination claims and failure-to-accommodate claims. Dkt. No. 113 at 1–2. Thus, the Court agrees with Judge Burch's determination that, because TDCJ did not move for summary judgment on these claims, they remain pending and unaffected by the instant motion for summary judgment.

### 4.    Conclusion

In sum, the Court overrules the plaintiff's objections (Dkt. No. 205) and the defendant's objections (Dkt. No. 204) and adopts the FCR (Dkt. No. 202) as the findings of this Court. Accordingly, the Court grants in part and denies in part TDJC's motion for summary judgment (Dkt. No. 178). The Court grants TDCJ's summary judgment motion on the plaintiff's transportation-related failure-to-accommodate claims and denies the summary judgment motion on the plaintiff's housing-related failure-to-accommodate claims and his claims for mental and emotional damages. Because the Court finds that TDCJ does not seek summary judgment on the plaintiff's disability discrimination claims based on

TDCJ's alleged culture of hostility towards inmates with mental-health issues, those claims survive as well.

So ordered on July 8, 2025.

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE